# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

MOHAMAD AHMAD MURAI,

                Petitioner,

v.

                                            Case No. 20-10816

REBECCA ADDUCCI,
MATTHEW T. ALBENCE,
KEVIN MCALEENAN, and
WILLIAM P. BARR,

                Respondents.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Mohamad Ahmad Murai filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1.) Petitioner is currently detained by the United States Immigration Customs and Enforcement Agency ("ICE") at the Calhoun County Detention Center in Battle Creek, Michigan. He alleges that the current threat of infection from the Coronavirus Disease ("COVID-19") and the potential for serious medical complications while in confinement pose an ongoing and unjustifiable risk to Petitioner's health, violating Petitioner's Fifth Amendment right to due process. The court is asked to grant injunctive relief, release Petitioner from detention, and to award attorney fees.

The government has filed a response and Petitioner replied. (ECF Nos. 10, 13.) The court finds a hearing unnecessary, and for the reasons provided below, the petition will be denied. E.D. Mich. L.R. 7.1(f)(2).

## I.  BACKGROUND

Petitioner was born in Syria in 1968. (ECF No. 1, PageID.21; ECF No. 10-2, PageID.472, ¶ 4.) He was admitted into the United States as a refugee in 2016. (ECF No. 1, PageID.19; ECF No. 10-2, PageID.472, ¶ 4.)

In 2017, Petitioner committed a sexual assault and was convicted of Fourth Degree Criminal Sexual Conduct in August 2018. (ECF No. 10-2, PageID.472-73, ¶¶ 6-7) He was sentenced to 183 days imprisonment. (*Id.*, PageID.473, ¶ 7.)  In June 2018, Petitioner submitted a Form I-485, Application to Register Permanent Residence or Adjust Status. (*Id.*, PageID.472, ¶ 5.) That request was denied due to Petitioner's failure to respond to requests for information about his sexual assault arrest. (*Id.*)

ICE arrested and detained Petitioner on January 13, 2020. (ECF No. 1, PageID.19; ECF No. 10-2, PageID.473, ¶ 8.) Petitioner was charged under 8 U.S.C. § 1227(a)(2)(A)(i) as removable from the United States for being convicted of a crime that "involve[d] moral turpitude[,] committed within five years . . . after [Petitioner's] date of admission," that is punishable by "a sentence of one year or longer." (ECF No. 1, PageID.19; ECF No. 10-2, PageID.473, ¶ 8.)

Pending removal proceedings, Petitioner has been detained in ICE custody at the Calhoun County Correctional Center in Battle Creek, Michigan. (ECF No. 1, PageID.19-20; ECF No. 10-2, PageID.472, ¶ 3.)

Petitioner filed this habeas petition against his alleged legal custodians in their official capacity. He lists Rebecca Adducci, Director of ICE Detroit Field Office; Matthew T. Albence, Acting Director of ICE; Kevin McAleenan, Secretary of the U.S. Department of Homeland Security; and William P. Barr, U.S. Attorney General, as respondents.

2

(ECF No. 1, PageID.20-21.) Petitioner seeks release from detention due to the outbreak of COVID-19.

## II.  DISCUSSION

Petitioner argues his detention violates the Fifth Amendment. The court will first address its jurisdiction to hear his petition and will then turn to the merits.

### A.  Jurisdiction

Respondents do not contest the court's jurisdiction to hear Petitioner's constitutional claim. Nonetheless, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).

Petitioner has filed suit under 28 U.S.C. § 2241. That statute provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). It grants federal courts "the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(c)).

Petitioner is being held in custody by the United States, and he alleges his detention violates the Constitution. The court has jurisdiction. *See Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (analyzing the merits of a habeas challenge to immigration detention pending removal proceedings), *vacated on other grounds by Hamama v. Adducci*, 946 F.3d 875 (6th Cir. 2020).

3

### B. Petitioner's Claims

Petitioner primarily argues that his confinement exposes him to an unacceptable risk of serious harm to his health. He cites Sixth Circuit and Supreme Court caselaw on claims for deliberate indifference. (ECF No. 1, PageID.31-35 (citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Flanory v. Bonn*, 604 F.3d 249, 255 (6th Cir. 2010)).)

However, Petitioner may be asserting, in addition, a claim of unconstitutional punishment of a detainee prior to a conviction or hearing. Although he does not detail the requirements of the claim and cites no relevant Sixth Circuit or Supreme Court cases, Petitioner's "Claim for Relief" includes "Unlawful Punishment," and he asserts that "civil detainees . . . may not be subject to punishment." (*Id.*, PageID.39.) It is not clear whether Petitioner is asserting deliberate indifference akin to unconstitutional punishment, as deliberate indifference is tied to the Eighth Amendment's bar on "cruel and unusual punishment," or instead a separate legal claim.[1] *Winkler v. Madison Co.*, 893 F.3d 877, 890 (6th Cir. 2018). The court will nonetheless analyze the petition under both deliberate indifference and unconstitutional punishment. The claims will be addressed in turn.

### 1. Indifference to Medical Needs

Petitioner alleges that his confinement during the spread of COVID-19 constitutes deliberate indifference to a serious medical need. While this claim is typically brought by convicted prisoners under the Eight Amendment and its bar on "cruel and unusual punishment," it can also be advanced by pretrial and immigration detainees

---

[1] Generally, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

under the Fifth Amendment's Due Process Clause. U.S. Const. amend. VIII; U.S. Const. amend. XIV, § 1; *Winkler*, 893 F.3d at 890 (quoting *Phillips v. Roane Co.*, 534 F.3d 531, 539 (6th Cir. 2008)) ("The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a . . . claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point."); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (analyzing immigration detainee's claim of deliberate indifference under the Fifth Amendment). The standard for both claims is the same. *Villegas*, 709 F.3d at 568 ("[D]etainee claims, though they sound in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment . . . are analyzed under the same rubric as Eighth Amendment claims brought by prisoners."); *Blackmore v. Kalamazoo Co.*, 390 F.3d 890, 895 (6th Cir. 2004) ("[D]etainees are analogously protected [from deliberate indifference] under the Due Process Clause of the Fourteenth Amendment.").

Government indifference to inmate medical needs can "constitute an unnecessary and wanton infliction of pain or . . . be repugnant to the conscience of mankind," in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (citations removed). To succeed, Petitioner must prove both an objective and subjective component. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

5

For the objective component, Petitioner must show "a sufficiently serious medical need," in that he "is incarcerated under conditions imposing a substantial risk of serious harm." *Miller v. Calhoun Co.*, 408 F.3d 803, 812-13 (6th Cir. 2005) (citations removed). "[It] further requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency—that is, it is not one that today's society chooses to tolerate." *Villegas*, 709 F.3d at 568 (quoting *Helling*, 509 U.S. at 36 (1993)). For the subjective component, Petitioner must prove "a sufficiently culpable state of mind in denying medical care . . . evidenc[ed] [by] deliberateness tantamount to intent to punish." *Miller*, 408 F.3d at 812-13 (citations removed). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Villegas*, 709 F.3d at 569 (quoting *Farmer*, 511 U.S. at 837).

Petitioner need not suffer from a current medical condition to bring a deliberate indifference claim. Inhumane confinement can violate the Eighth Amendment for "sufficiently imminent" future harm. *Helling*, 509 U.S. at 34. Petitioner must prove that he is "expos[ed] . . . to an unreasonable risk of serious harm in the future." *Dodson v. Wilkinson*, 304 F. App'x 434, 439 (6th Cir. 2008). Petitioner must still prove the traditional elements of deliberate indifference. *Id.* (citing *Helling*, 509 U.S. at 35) ("A claim of deliberate indifference to future serious harm requires proof of both the objective and subjective elements of an Eighth Amendment claim.").

Petitioner alleges that he suffers from asthma. A summary of Petitioner's medical records indicates that he has never sought treatment for asthma while at Calhoun County Correctional Center; medical staff have confirmed he has no history of asthma;

he has been medically examined repeatedly and his lungs have been found "clear"; and he denied having asthma when completing, with the help of an interpreter, a health history form on January 23, 2020. (ECF No. 10-2, PageID.475, ¶¶ 13-15; ECF No. 10-4, PageID.478.) Petitioner does not allege or present evidence that he has sought treatment for asthma or put Calhoun officials on notice that he suffers from any such ailment.

Even if Petitioner does have asthma but does not see the need to request diagnosis or treatment, he is not at "a substantial risk of serious harm." *Miller*, 408 F.3d at 812-13. Petitioner is fifty-one years old and his medical needs are being met at Calhoun. When Petitioner has been medically diagnosed with certain conditions, such as acid reflux and depression, he has received diagnosis, prescription medication, and repeated follow-up medical examinations. (ECF No. 10-2, PageID.474, ¶ 13.) Petitioner's current medical status, and the treatment provided at Calhoun, do not violate "contemporary standards of decency" under the objective prong of deliberate indifference. *Villegas*, 709 F.3d at 568.

Petitioner himself does not assert that Respondents are deliberately indifferent to his current health. He claims Respondents are deliberately indifferent to serious health complications that may result in the future, if he were to contract COVID-19. Petitioner seeks release from custody under § 2241, arguing that *no* conditions under which he might be confined can meet constitutional requirements. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core [of habeas relief] and may be brought pursuant to [42 U.S.C.] §

7

1983 in the first instance."); *Lutz v. Hemingway*, 476 F.Supp.2d 715, 718 (E.D. Mich. 2007) (Lawson, J.) ("Complaints that involve only conditions of confinement do not relate to the legality of the petitioner's confinement [as is the case for habeas petitions].").

Petitioner's claim fails. His detention does not pose a "*substantial* risk of *serious* harm," enough to warrant, out of a concern of basic humanity and contemporary decency, Petitioner's immediate release. *Miller*, 408 F.3d at 812-13 (emphasis added); *Villegas*, 709 F.3d at 568. "Substantial" is defined as "considerable in amount"; "serious" is defined as "such as to cause considerable distress." *Substantial*, Webster's Third New International Dictionary, Unabridged (2020); *Serious*, Webster's Third New International Dictionary, Unabridged (2020). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson . . . they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Blackmore*, 390 F.3d at 897 (finding a genuine issue of fact where a detainee suffering from appendicitis was placed in a jail cell for two days without medical treatment). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Id.*

Despite inherent limitations in mandating widespread "social distancing" while detaining hundreds of inmates, Calhoun has instituted extensive precautionary measures to mitigate the spread of COVID-19. When new inmates arrive, they are screened, assessed for symptoms, have their temperature taken, and are asked to

8

provide a history of potential exposure to COVID-19.[2] (ECF No. 10-5, PageID.485, ¶ 12.) Any inmate showing symptoms of COVID-19 is given a prompt medical examination, isolated, and quarantined in a housing unit separate from all other inmates.[3] (*Id.*, PageID.486, ¶¶ 13-15, 20.) If an inmate appears to be suffering from clinical deterioration in his medical condition as a result of COVID-19, he will be transferred out of Calhoun and into a local hospital or other equivalent facility. (*Id.*, ¶ 16.) Any inmate suspected of exposure to COVID-19, through contact with an individual confirmed to have contracted the disease, is placed on restricted movement for fourteen days and is monitored daily for development of symptoms. (*Id.*, ¶ 17.)

The jail is screening all staff upon entry and has suspended all in-person social visits. (*Id.*, PageID.487-88, ¶¶ 21-22.) While Respondents present evidence that cells are cleaned daily and common areas are cleaned hourly, inmate affidavits from Calhoun

---

[2] Petitioner, in his reply brief, attached an affidavit of a detainee at Calhoun who arrived on March 24, 2020 and was not screened for COVID-19 symptoms, did not have his temperature taken, and was not asked to provide of a history of potential exposure. (ECF No. 13-3, PageID.570, ¶ 2.) The outbreak of COVID-19 and governmental responses have been fast evolving. Respondents do not contest the adequacy of procedures to mitigate the spread of COVID-19 in late March. By contrast, Petitioner does not present evidence to contest the intake procures as they currently exist. Calhoun has instituted substantial precautionary measures over the course of several weeks, through March, April, and early May, as government learned from disease experts and implemented best practices. Furthermore, Petitioner's claim is not that his confinement in late March was inadequate. His argument is that *any and all* conditions of confinement will not meet basic constitutional requirements guaranteed through the Fifth and Eighth Amendment. *Nelson*, 541 U.S. at 643.

[3] Affidavits of inmates at Calhoun, included in Petitioner's reply, state that other inmates have experienced coughs. (ECF No. 13-2, PageID.566-67, ¶ 19; ECF No. 13-3, PageID.573-74, ¶ 12.) These inmates do not indicate that they are in any way trained or experienced in a medical field, nor do they allege that other inmates exhibit symptoms of COVID-19. Evidence that Calhoun institutes rapid response measures when detainees are observed to have COVID-19 symptoms by medical professionals stands uncontradicted.

state that at least some common areas are cleaned once or twice daily and cells are cleaned rarely. (*Id.*, PageID.488, ¶ 24; ECF No. 13-2, PageID.568, ¶ 22; ECF No. 13-3, PageID.574-75, ¶ 14.) Inmates are given access at all times to cleaning supplies to wash hands, as well as access to hand washing stations.[4] (ECF No. 10-5, PageID.488, ¶ 25.) There is evidence that, prior to April 18, 2020, inmates were not given supplies to disinfect the interior of their cells. (ECF No. 13-3, PageID.574-75, ¶ 14.) However, Respondents present uncontested evidence that current policy and practice at Calhoun is to provide detainees with supplies to perform their own cell cleaning. (ECF No. 10-5, PageID.488, ¶ 24.)

As of the date of this opinion, Calhoun has minimal confirmed cases of COVID-19. No inmate who has tested positive for COVID-19 has ever been placed in the general jail population, where Petitioner resides. Any inmate exposed to an infected person has been tested, has received a negative result, and has remain isolated for further observation.[5]

Petitioner has no prior medical history that predisposes him to serious complications from contracting COVID-19. He is middle aged and, although suffering from potentially severe depression, comparatively healthy. Even if the court were to assume that Petitioner has a form of asthma that has not been observed by medical

---

[4] Inmate affidavits state that Calhoun has not provided hand sanitizer. (ECF No. 13-2, PageID.568, ¶ 23; ECF No. 13-3, PageID.574, ¶ 14.) Respondents admit this but point out that hand sanitizer is not provided because it contains alcohol and inmates may attempt to consume it. (ECF No. 10-5, PageID.488, ¶ 25.)

[5] When the government filed its response on April 27, 2020, there were no confirmed cases of COVID-19 at Calhoun. The government has since jointly updated the court and defense counsel, through informal communications, that two newly arrived inmates tested positive. The exact number of positive cases, while informative, is not determinative to the court's analysis.

professionals (and for which Petitioner has rejected or otherwise not sought treatment), Calhoun has instituted policies to mitigate the risk of COVID-19, as noted immediately above. Petitioner's worry that he *may* contract the disease and, if so, that the disease *may* progress into a debilitating, crippling, or life-threatening state is insufficient to present a constitutional violation. There is not a "substantial" and "considerable" risk that Petitioner will deteriorate into a "serious" state of "considerable distress." *Miller*, 408 F.3d at 812-13. "Contemporary standards of decency" do not demand that Petitioner be released. *Farmer*, 511 U.S. at 847; *Villegas*, 709 F.3d at 568.

This is especially true where Petitioner's release may be into a community experiencing substantial number of COVID-19 infection cases. It is not difficult to envision Petitioner leaving a controlled environment with minimal confirmed cases in the general population at Calhoun, only to encounter, and be free to roam within, a civil society with experiencing tens of thousands of cases. State of Michigan, *Coronavirus: Michigan Data* (last visited May 7, 2020), https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (detailing reported COVID-19 cases across Petitioner's home state of Michigan). Moreover, while detained at Calhoun, Petitioner has access to on-site medical care and, if needed, hospital care. (ECF No. 10-5, PageID.486, ¶¶ 13-16, 20.) The court is left to guess whether Petitioner would have access to medical care, and the quality of such care, if he were released.[6]

---

[6] This is particularly important for Petitioner's mental health. An inmate affidavit describes Petitioner as "going into uncontrollable rages which are extremely self-destructive." (ECF No. 13-2, PageID.565, ¶ 14.) Based on the record, Petitioner may have a better chance of receiving treatment and not harming himself or others at Calhoun than with a release into society. At Calhoun, he receives medication and

11

On these facts, Petitioner has also not proven the subjective component of deliberate indifference. The subject government agencies here have instituted numerous mitigation strategies for a disease that has not entered the general population, may not spread even if it entered, and may not result in serious symptoms, or any symptoms whatsoever, if Petitioner were to contract it. Respondents have not acted with "deliberateness tantamount to intent to punish." *Miller*, 408 F.3d at 812-13. Petitioner has not presented facts that Respondents knew of "a substantial risk of serious harm" and deliberately disregarded it. *Villegas*, 709 F.3d at 569. With the information currently known about COVID-19, Respondents, and their partners at Calhoun, have gauged the risk to Petitioner and other detainees and have acted protectively.

Finally, future harm to Petitioner is not "sufficiently imminent." *Helling*, 509 U.S. at 34. Respondents have not created an "unreasonable [future] risk" of Petitioner contracting a serious medical condition. *Dodson*, 304 F. App'x at 439. Instead, Calhoun has substantially altered the way its facility operates and has pursued aggressive reforms to prevent COVID-19 from entering the general population, to avert the spread of the disease if it did enter, and to ensure detainees are provided quality medical attention, if needed. Speculation as to what *could* go wrong with such conditions and how Petitioner *could* be affected given his health profile does not amount to an "imminent" or "unreasonable" risk sufficient to establish a constitutional violation. *Helling*, 509 U.S. at 34; *Dodson*, 304 F. App'x at 439.

---

check-ups, and is confined to a jail cell with no weapons. The court has been afforded no guarantees—indeed, little actual evidence at all—as to Petitioner's home environment if released.

### 2. Unconstitutional Punishment

The Constitution's guarantee of due process requires that punishment be imposed only "on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of [an individual's] arrest, indictment, or custody, or from other matters not introduced as proof at trial." *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). It is foundational in our system of law that "an individual is to be treated as innocent until proven guilty." *Id.* at 531.

Accordingly, "a detainee may not be punished prior to an adjudication of guilt." *J.H. v. Williamson Co.*, 951 F.3d 709, 717 (6th Cir. 2020) (quoting *Bell*, 441 U.S. at 535). "[A] detainee can demonstrate that he was subjected to unconstitutional punishment in either of two ways: (1) by 'showing an expressed intent to punish on the part of the detention facility officials,' or (2) by showing that a restriction or condition is not rationally related to a legitimate government objective or is excessive in relation to that purpose." *Id.* at 717 (quoting *Bell*, 441 U.S. at 538-39); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 2473-74 (2015).

Respondents have not shown an "expressed intent" to punish Petitioner. *J.H.*, 951 F.3d at 717. Petitioner has been convicted of a sexual assault and Respondents allege he is now deportable. (ECF No. 1, PageID.19; ECF No. 10-2, PageID.473, ¶¶ 6-8.) Petitioner has been detained so as "to insure [his] presence at [a removal hearing]," and Respondents have made no statement and have taken no act to purposefully punish Petitioner for his status. *Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991) (citations removed) (holding that a defendant's intensive segregated confinement constitutional, identifying the confinement as a precaution taken to insure the

defendant's presence at trial); *see also United States v. Salerno*, 481 U.S. 739, 746 (1987) ("[T]he mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment."). Respondents have instead placed Petitioner in the custody of Calhoun, where officials have worked to keep Petitioner in a healthy and safe environment. (ECF No. 10-5, PageID.485-88, ¶¶ 11-25.) The threat faced by COVID-19 has been acknowledged and monitored; precautions have been taken. (*Id.*) Express punitive intent is lacking. *J.H.*, 951 F.3d at 717.

Petitioner's continued detention is also "rationally related to a legitimate government objective." *J.H.*, 951 F.3d at 717. Respondent's objective is to enforce the immigration laws of the United States. As a convicted sex offender, Petitioner may be subject to removal under 8 U.S.C. § 1227(a)(2)(A)(i). (ECF No. 1, PageID.19; ECF No. 10-2, PageID.472, ¶¶ 6-8.) Petitioner is being detained "to insure [his] presence" at his deportation hearing. *Martucci*, 944 F.2d at 294. His release may facilitate flight, preventing removal. Confinement does not become unnecessary simply due to the existence of COVID-19. Calhoun has instituted extensive reforms to limit the risk of the disease. (ECF No. 10-5, PageID.485-88, ¶¶ 11-25.) It is entirely speculative whether Petitioner would develop serious complications of COVID-19 even if he were to contract the disease. If released, Petitioner would still face the risk of contracting COVID-19, perhaps with less access to testing and medical care. Petitioner's detention is "rational" and is not "excessive." *J.H.*, 951 F.3d at 717.

### III. CONCLUSION

The risk of contracting COVID-19 and the risk of developing serious complications while being detained at Calhoun County Correctional Center does not rise

to the level of "unnecessary and wanton infliction of pain" as prohibited by the Eighth Amendment and Fifth Amendment. *Estelle*, 429 U.S. at 105-06; *Winkler*, 893 F.3d at 890. There has not been demonstrated a sufficient risk of Petitioner suffering serious harm; Respondents' actions in detaining Petitioner at Calhoun are not consciously indifferent to Petitioner's health; and the risk of harm to Petitioner is too remote to establish a constitutional violation. Petitioner also fails to present a valid claim of unconstitutional punishment of a detainee, as respondents lack any express intent to punish, while Petitioner's detention is "rationally related to a legitimate government objective." *J.H.*, 951 F.3d at 717.

The petition will be denied. Accordingly,

IT IS ORDERED that Petitioner's "Petition for Writ of Habeas Corpus" (ECF No. 1) is DENIED.

                                                      s/Robert H. Cleland        /
                                                      ROBERT H. CLELAND
                                                      UNITED STATES DISTRICT JUDGE

Dated: May 18, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 18, 2020, by electronic and/or ordinary mail.

                                                      s/Lisa Wagner            /
                                                      Case Manager and Deputy Clerk
                                                      (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-10816.MURAI.Habeas.RMK.RHC.4.chd.docx